# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 22-9001

_____

ROBERT WHARTON,
Appellant,

v.

SUPERINTENDENT GRATERFORD SCI, et al.,
Appellees.

_____

On Appeal from Order of United States District Court,
Eastern District of Pennsylvania (Goldberg, J.) entered
May 11, 20222, in Civil Action No. 2-01-cv-06049

## REPLY BRIEF FOR APPELLANT

STUART LEV
ELIZABETH MCHUGH
Federal Community Defender Office
 Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
Stuart_lev@fd.org

*Counsel for Appellant, Robert Wharton*

Dated:    May 17, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

ARGUMENT ........................................................................................1

I.  TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
    INVESTIGATE AND PRESENT EVIDENCE OF APPELLANT'S
    POSITIVE PRISON ADJUSTMENT; THE DISTRICT COURT
    ERRED IN FINDING THAT APPELLANT FAILED TO ESTABLISH
    PREJUDICE ...................................................................................1

    A.  Proper Application of the Prejudice Standard ...................................2

    B.  Jury Deliberations Are Relevant ....................................................4

    C.  Counsel's Testimony is Relevant ....................................................5

    D.  The Escape Does Not Carry the Weight Amicus Suggests...........................11

    E.  Expert Testimony Tips the Scales Towards Mr. Wharton ...........................15

II. AT A MINIMUM, THIS CASE SHOULD BE REMANDED FOR A
    NEW HEARING BEFORE A DIFFERENT JUDGE WHERE THE
    TOTALITY OF CIRCUMSTANCES, INCLUDING THE DISTRICT
    COURT'S FOCUS ON ALLEGATIONS OF UNETHICAL CONDUCT
    BY THE DAO, CREATED AN APPEARANCE OF UNFAIRNESS
    AND PARTIALITY ...........................................................................19

CONCLUSION ....................................................................................24

# TABLE OF AUTHORITIES

**Federal Cases**

*Abdul-Salaam v. Sec'y of Pennsylvania Dep't of Corr.*, 895 F.3d 254 (3d Cir. 2018) ................................................................................................ 6, 9

*Andrus v. Texas*, 140 S. Ct. 1875 (2020) ............................................. 2-3

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ..................... 21

*Harrington v. Richter,* 526 U.S. 86 (2011)............................................ 8

*Hinton v. Alabama*, 571 U.S. 263 (2014) ........................................... 7, 9

*In re Murchison*, 349 U.S. 133 (1955) ............................................ 20, 21

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ................................... 7-8

*Lee v. Glunt*, 667 F.3d 397–08 (3d Cir. 2012) ...................................... 19

*Lesko v. Sec'y Pa. Dep't of Corrections*, 34 F.4th 211 (3d Cir. 2022) ................. 9

*Massey v. Superintendent, SCI Coal Township*, 2021 WL 2910930 at *6 (3d Cir. 2021) ................................................................................................ 2

*Outten v. Kearney*, 464 F.3d 401 (3d Cir. 2006) ............................... 4, 6

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002) ................... 21

*Strickland v. Washington*, 466 U.S. 686–91 (1984) ............................... 5

*Tumey v. Ohio*, 273 U.S. 510 (1927) ................................................... 21

*United States v. Gray*, 878 F.2d 702 (3d Cir. 1989) ............................. 6

*United States v. Kennedy*, 682 F.3d 244 (3d Cir 2012) ........................ 22

*Wharton v. Vaughn*, 722 F. App'x. 268–82 (3d Cir. 2018) ................... 2

*Williams v. Taylor*, 529 U.S. 362 (2000) .......................................... 4, 9

*Withrow v. Larkin*, 421 U.S. 35 (1975) ............................................... 21

**State Cases**

*Commonwealth v. Hickman*, 309 A.2d 564–68 (Pa. 1973) ................... 12

*Commonwealth v. Hughes*, 865 A.2d 761 (Pa. 2004) ........................... 12

*Commonwealth v. Basemore*, 582 A.2d 861 (Pa. 1990) ................. 12, 14

After Appellant, Robert Wharton, and Respondents, represented by the Philadelphia District Attorney Office, filed their respective briefs, the Office of the Attorney General filed a brief in the role of amicus curiae opposing relief. Appellant files this reply to the amicus brief.

## ARGUMENT

I.   **TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PRESENT EVIDENCE OF APPELLANT'S POSITIVE PRISON ADJUSTMENT; THE DISTRICT COURT ERRED IN FINDING THAT APPELLANT FAILED TO ESTABLISH PREJUDICE.**

The amicus brief is remarkable for its selective presentation of facts and law. While the brief focuses on Mr. Wharton's 1986 City Hall escape and his two 1989 major misconducts, Amicus Brief ("AB") at 13–20, as well as the expert testimony amicus presented below, AB at 20–26, the brief either ignored, or summarily dismissed, the evidence and law that might be supportive of Mr. Wharton's claim for relief, including:

- For the three years prior to the trial, Mr. Wharton had a near perfect record of behavior except for one minor misconduct for which he received a warning;
- Mr. Wharton had no instances of violent or assaultive behavior during his six and a half years in state custody;
- Trial counsel testified that he failed to investigate Mr. Wharton's prison adjustment because he was not aware that such evidence could be used at the resentencing trial;
- Trial counsel testified that he believed the prison records showed that Mr. Wharton had adjusted well in prison;

- Trial counsel testified that he would have presented such evidence to the jury even if it would have allowed the Commonwealth to present evidence of the escape and misconducts;
- Trial counsel testified that the adjustment evidence would have been consistent with his penalty phase strategy;
- After more than a full day of deliberation, the jury submitted a note that they were deadlocked;
- The jury rejected two aggravating circumstances alleged by the Commonwealth (torture and grave risk to another);
- Prejudice would be shown if there was a reasonable probability that even a single juror might have voted for life but for counsel's error.

Because the amicus brief fails to fully engage the facts and legal standards at issue, it is of little help to this Court.

A.       **Proper Application of the Prejudice Standard**

The bottom line is this. The evidence of Mr. Wharton's prison adjustment shows many positive, but some negative, behaviors. Some jurors might have been persuaded by the negatives, but others could reasonably find the positive behaviors to be more compelling. *See Massey v. Superintendent, SCI Coal Township*, 2021 WL 2910930 at *6 (3d Cir. 2021) (unpublished) ("The fact that one or more jurors may have made those findings does not per se negate the possibility that at least one juror could have found otherwise"). The same is true regarding the experts. Some jurors could reasonably find that Mr. Wharton's experts were more persuasive; others might be persuaded by the amicus experts. This balance shows prejudice because Mr. Wharton need only show a reasonable probability that *one juror* would have viewed the evidence favorably. *See Wharton v. Vaughn*, 722 F. App'x. 268,

2

281–82 (3d Cir. 2018) (citing *Blystone v. Horn*, 664 F.3d 397, 426–27 (3d Cir. 2011)). *See also Andrus v. Texas*, 140 S. Ct. 1875, 1886 (2020) (prejudice only requires a reasonable probability that a single juror would weigh all the evidence and strike a different balance) (citing *Wiggins v. Smith*, 539 U.S. 510, 536 (2003)).

Amicus asserts a prejudice argument that focuses on what "the jury" was likely to do but for counsel's errors. AB at 2, 33, 34. This focus, however, is misplaced. The focus is not on the jury as a whole, but on the reasonable probability of how any single juror might be affected by counsel's error. *Massey* at *5–6.

The failure to investigate and present the prison adjustment evidence was prejudicial because there is a reasonable probability that a single juror would have favorably weighed Mr. Wharton's overall positive adjustment, lack of violent or assaultive conduct, and in combination with all other mitigation that counsel presented, voted for a life sentence. Indeed, a single juror could reasonably vote for life based solely on the belief that Mr. Wharton's behavior over the most recent three-year period showed that he is capable of rehabilitation. In other words, a finding of no prejudice can be made only if the negative aspects of Mr. Wharton's prison behavior was so overwhelming that *every juror* necessarily would have rejected the many positive features of his prison adjustment. No such finding can be made on this record.

3

## B.     Jury Deliberations Are Relevant

This was not an easy case for the jurors.  After more than one full day of deliberation, the jury sent out a note that they were deadlocked.  And although the jury eventually found that two aggravating circumstances (multiple murders and commission during a felony) outweighed the mitigating circumstances, the jury rejected two of the aggravating circumstances (torture and grave risk of danger to another) that the prosecution had asked them to find.  Amicus asks this Court to ignore the jury's deliberations, AB at 39–41, but this Court's precedent allows for consideration of the jury's deliberations in determining prejudice.  *See* Wharton's Initial Brief ("WIB") at 33–34.

In *Outten v. Kearney*, 464 F.3d 401 (3d Cir. 2006), this Court found counsel's failure to adequately investigate the defendant's background was prejudicial even though "not all of the evidence in the records counsel failed to investigate is favorable." *Id.*, 464 F.3d at 422.  This Court recognized, "[t]his is nearly always the case," *id.,* just as the Supreme Court had acknowledged in *Williams v. Taylor*, 529 U.S. 362, 398 (2000).  Even under AEDPA's high standard, this Court found prejudice because counsel could have argued a broader range of mitigation.  *Outten,* 464 F.3d at 422. In reaching this conclusion, this Court took into account the jury's close vote (7-5) to recommend death: "persuading even one juror to vote for life imprisonment could have made all the difference." *Id.*

4

The same analysis is appropriate here. As in *Outten,* the jury's actions in sending the judge a deadlock note and rejecting two of the aggravation circumstances shows that this was a close case where there was a reasonable probability that persuading one juror would have changed the verdict.

### C.    Counsel's Testimony is Relevant

Amicus argues that trial counsel was not deficient for failing to investigate and obtain records of Appellant's adjustment while in state custody. Amicus seems to assert that because those records contain some negative information, counsel had no duty to investigate. AB at 32 & n.7. This argument makes no sense. Deficient performance analysis examines counsel's actions and inactions, and the reasons behind those actions or inactions. It does not examine what counsel might have found had he conducted a competent investigation.

Amicus conflates the deficient performance and prejudice prongs of the *Strickland* test. More importantly, it ignores trial counsel's testimony and his candid admission that, at the time of the resentencing trial, he was ignorant of *Skipper* and its holding that a defendant's behavior in prison is admissible as mitigating evidence at a capital sentencing trial. A534, 571.

Counsel has a duty to investigate. While strategic decisions made after a thorough investigation are given great respect, decisions made after an inadequate investigation can constitute deficient performance. *Strickland v. Washington*, 466

5

U.S. 686, 690–91 (1984). Decisions not to investigate certain types of evidence cannot be called strategic where counsel fails to investigate the necessary background information. *Abdul-Salaam v. Sec'y of Pennsylvania Dep't of Corr.*, 895 F.3d 254, 268 (3d Cir. 2018); *United States v. Gray,* 878 F.2d 702, 711 (3d Cir. 1989). A failure to investigate background records can constitute deficient performance even where not all the information contained in those records is favorable to the defense. *Abdul-Salaam*, 895 F.3d at 268 (citing *Williams v. Taylor*, 529 U.S.362, 396 (2000) and *Sears v. Upton*, 581 U.S. 945 (2010)). Thus, where counsel has failed to investigate, his failure to present available evidence is a result of a lack of preparation, not strategy. *Id*. at 269. *Accord Outtey*, 464 F.3d at 415 (counsel was not in a position to make a reasonable decision about sentencing strategy because the investigation in preparation for sentencing was deficient).

Here, counsel's failure to investigate prison adjustment was based on his ignorance of the law. Trial counsel testified that he did not order Mr. Wharton's incarceration records or investigate his prison adjustment. A534. He explained that his failure to investigate this area of mitigation was not based on any strategy: "It was just pure ignorance." *Id*. He stated that his "failure to present, investigate [prison] records, present those records, present the expert testimony, [was] simply a failure on my part to be knowledgeable about the *Skipper* case . . . ." A571.

6

Counsel explained that he would have presented evidence of Mr. Wharton's prison adjustment had he known the law.  He acknowledged that showing the jury that Mr. Wharton maintained a polite demeanor with prison staff and was a peaceful inmate would have corroborated the family testimony he presented at sentencing. A545.  Counsel believed that unbiased information from prison personnel about Mr. Wharton's positive adjustment and polite demeanor "unequivocally" would have made a difference to the jury.   A697.   Mr. Cannon testified that Mr. Wharton's educational pursuits while in custody would have given him the opportunity to argue that he was accepting of his situation and "participating to the extent that he can in prison life in a meaningful way." A544.  Counsel would have told the jury that Mr. Wharton's appropriate use of the prison grievance system showed he was adapting well to the rules of the prison.  A549.

"An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland." Hinton v. Alabama*, 571 U.S. 263, 274 (2014).  *See Massey* at *5 (quoting *Hinton*).  Thus, in *Hinton*, the Court held that counsel's failure to obtain a qualified expert constituted deficient performance because it was based on counsel's erroneous belief that funding was not available to him under state law.  *See also Williams*, 528 U.S. at 395 (deficient performance where counsel failed to investigate certain records "not because of any

7

strategic calculation but because they incorrectly thought that state law barred access to such records"); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (finding deficient performance where counsel's failure to request discovery was based on his mistaken belief that the state was obligated to disclose without a request).

Amicus nevertheless asks this Court to ignore counsel's ignorance of the law. Citing *Harrington v. Richter*, 562 U.S. 86, 109–10 (2011), amicus argues that this Court should look only to the "objective reasonableness" of counsel's performance. AB 11.

Amicus reads *Richter* too broadly.   In *Richter*, the habeas petitioner challenged counsel's failure to consult with an expert and present testimony concerning the blood stains found at the crime scene.  Counsel, instead, chose an alternate strategy that did not depend on expert testimony and, thus, had not sought out an expert.  The state court found that counsel's strategic decision was reasonable, but, on habeas, the Court of Appeals held that it was not.  The Supreme Court applied AEDPA and found that the state court was reasonable, so no habeas relief could be granted.  It did *not* hold that a habeas court must ignore counsel's admission that he was unaware of the controlling law.

Unlike *Richter*, this is not an AEDPA case examining the reasonableness of the state court ruling.  Mr. Wharton's counsel did not make a strategic decision to

forego investigation of his prison adjustment. His decision was based on ignorance. *Richter* is not controlling, but *Hinton* is.

*Hinton* relied on defense counsel's testimony that demonstrated his mistaken belief about the controlling law. Applying a subjective analysis to the reasonableness of counsel's actions, the Supreme Court held that "it was unreasonable for Hinton's lawyer to fail to seek additional funds to hire an expert where that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Hinton*, 571 U.S. at 273. Similarly, in this case, trial counsel's ignorance of the applicable law is objectively unreasonable and grounds for finding deficient performance.

In any event, counsel's failure to investigate was objectively unreasonable. Any competent capital defense lawyer, preparing for a resentencing trial six years after his client was initially sentenced to death, would want to know about a client's prison adjustment during that time. Obtaining the client's prison records is a minimal step any reasonably competent attorney would take. *See Williams*, 529 U.S. at 395 (counsel's failure to investigate client's prison records contributed to the deficient performance finding); *Lesko v. Sec'y Pa. Dep't of Corrections*, 34 F.4th 211, 246 (3d Cir. 2022) (counsel has a duty to obtain relevant records as part of a thorough background investigation and performed deficiently when he failed to do so without any "reasoned judgement"). *See also Abdul-Salaam*, 895 F.3d at 267–68

(counsel's subjective beliefs about the dangers of introducing expert testimony did not excuse his failure to obtain background records).

Amicus cites to several cases in which courts have rejected ineffective assistance of counsel claims where counsel failed to investigate or present evidence of positive prison adjustment either because counsel knew of that evidence and made a strategic decision not to present it, or because reviewing courts believed the evidence was not sufficient to establish prejudice on the particular facts of the case. AB at 30–31, 37–38. But none of those cases present facts like those here, where trial counsel admitted that he did not know that prison adjustment evidence could be admitted as evidence; trial counsel testified that he would have wanted to present evidence of Mr. Wharton's prison adjustment had he known the law; trial counsel testified that such evidence would have been consistent with his strategy; trial counsel testified to his belief that the positive aspects of his prison adjustment outweighed the negative behaviors and that he would have presented the evidence even if it opened the door to the evidence of the escape[1] and 1989 misconducts[2]; and

---

[1] Counsel testified that the evidence of Mr. Wharton's conviction for escape prior to entering the DOC in addition to the 1989 misconducts would not have deterred him from presenting evidence of Wharton's adjustment to life in state prison. A605.

[2] Counsel acknowledged that 1989 misconducts reflected negatively on Mr. Wharton but explained that "I would have told the jury with great emphasis that these records reflect a period of 6.3 years during the course of which six nonviolent misconducts were achieved. In other words, 2,190 days went by, [of] consecutive confinement and he had six nonviolent misconducts over that entire period of time, so these records were very favorable." A559–60.

the sentencing jury struggled to reach a verdict, rejected two of the aggravating circumstances, and, at one point, informed the court that they were deadlocked.[3] Given all of these unique facts and the "one juror" standard that must be applied, Mr. Wharton's case is different from those cited by amicus and he is deserving of relief.

### D.    The Escape Does Not Carry the Weight Amicus Suggests

The amicus brief argues extensively that Mr. Wharton's 1986 City Hall escape attempt would lead every juror to conclude that it negates any evidence of positive prison adjustment. This argument is flawed for several reasons.[4]

---

[3] Mr. Cannon explained that this was a close case given that the jury deliberated over the course of three days and were deadlocked. He believed it would have made a difference in the outcome of the case if the jury "had the opportunity to consider all of the positives in the prison record," and that these positives "would have clearly allowed the jury to return a verdict of life in prison." A692.

[4] Amicus' version of the escape asserts that Mr. Wharton possessed and used a handcuff key during the escape attempt. AB 13–14. Although that fact was alleged in a criminal complaint, it has never been proven and, while Appellant pled guilty to the escape charged in the information, he never agreed that the facts contained in the complaint were true. Although charged with possession of implements to escape, that charge was nolle prossed at the time of the plea to escape. There also is no record of any colloquy as to the underlying facts of that escape, and there was no admission that he possessed or used a handcuff key. Although the district court, in a pre-hearing ruling, indicated that any charges that did not result in a conviction would not be admitted at the evidentiary hearing, NT 2/12/21, 15–23, the court later accepted the allegation concerning the handcuff key. A15. Yet there is nothing in the record, other than the allegations in the complaint, that proves the possession of a handcuff key, and, while Mr. Wharton pled guilty to escape, there was no plea, and no admission, to possession or use of a key. As trial counsel testified "no one has ever seen a handcuff key from that incident." NT 2/25/21, 197.

First, it is not clear that the evidence of the escape would be admitted as proper rebuttal to Mr. Wharton's record of adjustment in state custody. *See* WIB at 36. Indeed, trial counsel testified that he would have filed a motion in limine to exclude any evidence of the escape. NT 2/25/21, 199. Evidence of the escape would only be admitted in the discretion of the court if it directly rebuts the specific mitigation evidence presented. *Commonwealth v. Hughes*, 865 A.2d 761, 797 n.40 (Pa. 2004); *Commonwealth v. Hickman*, 309 A.2d 564, 567–68 (Pa. 1973). Amicus does not address those cases.

Here, evidence of the escape did not directly rebut the prison adjustment evidence. Throughout the litigation of this claim, in both state and federal courts, Appellant relied exclusively on Department of Corrections records concerning his time in state custody, as well as the report of a mental health expert who reviewed those records. Appellant never proffered any evidence concerning his time in county custody. Thus, the escape attempt, which occurred years earlier, while Appellant was still in county custody, did not directly rebut the Department of Corrections records concerning his time in state custody.

Amicus relies on *Commonwealth v. Basemore*, 582 A.2d 861, 870 (Pa. 1990) to support its assumption that the escape "surely would have been admissible." AB at 16. In *Basemore,* the Court held that the defendant's prior conviction for robbery could have been used to rebut any claim that defendant "did not have a significant

12

history of prior criminal convictions." 582 A.2d at 870. *Basemore* shows a much more direct rebuttal than present here.

Second, even if evidence of the escape were admitted, the circumstances of the escape were very different than the conditions of his incarceration in state custody. Mr. Wharton pushed a sheriff and ran as he was being escorted through a public hallway in City Hall that connected to stairs leading to the street. A reasonable juror could find that those actions could not be repeated if Mr. Wharton were incarcerated, as he would be, behind the gated walls of a maximum security prison, where he would have been safely held if sentenced to life. Indeed, amicus corrections expert Dr. Beard conceded that the Department of Corrections had the facilities to safely confine Mr. Wharton if sentenced to life. A1115, 1168–71. Given these differences, not every juror would necessarily conclude that the six-year-old escape that occurred before he entered state custody negated his positive adjustment and non-assaultive behavior in state custody.

Third, as noted above, Appellant's evidence focused on his positive adjustment after his transfer to state custody. Trial counsel believed that the amount of time that had passed since the escape, six and half years prior to the resentencing, would have minimized its impact on the jury. NT 2/25/21, 199. Even if admitted, any one juror could reasonably conclude that the escape was too far removed from

and did not directly relate to his adjustment to state custody and, therefore, give it little weight.

Fourth, throughout the years of litigation on this issue prior to the remand, no prosecutor ever tried to inform any court about the escape, or suggest that it was relevant to rebut evidence of positive prison adjustment. While some of the very same lawyers whose names appear on the amicus brief were employed by the DAO and appeared on the briefs filed by the Commonwealth at prior stages in this litigation, they apparently did not think the escape was important enough to proffer to the state and federal courts prior to the proceedings after remand. *See* WIB at 37–38. Amicus now suggests that there was "no need" to rebut Wharton's evidence of prior positive prison adjustment. AB at 14–15. This argument rings hollow, as the Commonwealth had consistently argued that the prison records contained negative information such as instances of misconduct that rebutted any claim of positive adjustment. Surely, if the escape was so important, the Commonwealth's lawyers would have brought it to a court's attention. But they did not raise the escape. Indeed, after this Court granted COA on this claim, the DAO knew the issue was significant. But while the headnote of the DAO 2016 brief[5] relating to this issue argues that Wharton "would have opened the door to affirmatively bad evidence,"

---

[5] *Wharton v. Vaughn*, Docket No. 13-9002, Document No. 003112295142, filed 5/13/2016.

*id.* at 127, and the argument detailed the "anti-mitigating" evidence that this Court should consider, *id.* at 136–38, Mr. Wharton's escape conviction was never proffered as proper rebuttal evidence in this or any other court.

### E.     Expert Testimony Tips the Scales Towards Mr. Wharton

Amicus leans heavily on the testimony of amicus counsel's own experts it presented at the hearing, who concluded that Mr. Wharton's adjustment was not positive due to the escape and the 1989 misconducts, and suggested that he posed a future risk.  AB at 20–26.  At the same time, amicus devotes little if any discussion to the testimony of Mr. Wharton's experts, who, looking at the whole of his record of positive and negative actions, reached the opposite conclusions, and found that Mr. Wharton displayed an overall positive adjustment and was not likely to be a future risk.  WIB at 11–13.  Moreover, amicus does not acknowledge that its experts recognized some positive behaviors and adjustments on Mr. Wharton's part.  WIB at 15–17.  Such an unbalanced and highly partisan approach provides little assistance to this Court, which must consider all of the evidence that was, or could have been, presented to the resentencing jury.

On whole, the expert evidence tips in Mr. Wharton's favor.  As Appellant's corrections expert, Muareen Baird, explained: the monthly program review reports had a consistent positive theme; the yearly prescriptive program plans showed Mr. Wharton meeting his yearly goals; Mr. Wharton's use of the grievance process was

positive; and his educational efforts, ties to family and friends, and absence of assaultive behavior all reflected well on his institutional adjustment. A1385–88. Ms. Baird also found it significant that Mr. Wharton maintained his positive adjustment during his disciplinary time, with good behavior and no misconducts, given his isolation without access to television and telephone.  A1414.

Dr. Neil Blumberg, Appellant's mental health expert, reviewed his institutional, educational, and criminal history records and concluded that Mr. Wharton had made a positive prison adjustment between 1986 and 1992 and would continue to make a positive adjustment to incarceration following his sentencing in 1992.  A425.  He found that Mr. Wharton was good candidate for positive prison adjustment and that records since 1992 showed that to be true.  A440; A502.

Amicus experts agreed with much of this testimony.  Dr. Beard, the amicus corrections expert, agreed with Ms. Baird that the DOC was well equipped to house inmates like Mr. Wharton for a life sentence.  A1115, 1168–71.  Dr. Beard also agreed that Mr. Wharton's time in disciplinary custody was difficult, and his good behavior under those conditions was a positive factor in his adjustment. A1190.  He acknowledged that Mr. Wharton's attendance at religious services, educational pursuits, good housing reports, contact with family, and lack of violence were all evidence of positive adjustment to incarceration.  A1162, 1167, 1200, 1213, 1221.

16

He further agreed that Mr. Wharton, despite having these opportunities to engage in violent behavior, had no history of altercations with staff or other inmates. A1162.

Dr. O'Brien, the amicus mental health expert, also agreed that Mr. Wharton displayed positive traits while in custody. He agreed that Mr. Wharton's efforts to further his education represented a constructive use of his time. A778. He acknowledged that the PRC reports documented that Mr. Wharton was polite, cooperative, and interactive with staff, and that his PPP reports showed that Mr. Wharton met his yearly institutional goals of maintaining positive contacts with his counselor, pursuing his education, and engaging in physical exercise. A786–87; A828. Mr. Wharton's use of the grievance process showed that he was abiding by the rules of the institution. A830.

Thus, while Appellant's and amicus experts reached different conclusions, they all recognized the many positive aspects of Mr. Wharton's adjustment. They differed only as to whether the many years of positive behavior and reports were outweighed by the escape and the 1989 misconducts.

Regardless, the differences are not dispositive. Appellant need not show that every juror would have been swayed by his positive behavior and accomplishments; he need only show a reasonable probability that a single juror likely would be swayed. Given the evidence, Mr. Wharton meets this standard easily. While some jurors might be swayed by the amicus experts, other jurors are just as likely to be

swayed by Mr. Wharton's experts. Where even the opposing experts recognize some degree of positive behavior, it cannot be said that no juror on the highly divided jury was likely to give weight his positive adjustment and vote for life.

In a case with conflicting expert conclusions, it is a rare situation where a court can look back and say that some opinions were right, and others wrong. But this is such a rare situation. With the benefit of thirty years of history, Mr. Wharton has shown that his experts conclusions were right, and the amicus experts conclusions were wrong. Mr. Wharton's spotless record of good behavior since the 1992 resentencing demonstrates that he had made a positive adjustment and that the amicus expert predictions that he was a future risk were wrong. *See* Appellee Brief ("DAOB") at 2–4, 15, 21, 26, 31 n.7.

Amicus argues that Mr. Wharton's thirty years of good behavior are irrelevant to the issues before this Court because such evidence could not have been presented to the jury in 1992. AB at 41. It is true, of course, that Mr. Wharton's thirty years of good behavior would not have been known by a 1992 jury. But such evidence was relevant at the evidentiary hearing, and the district court allowed questions about it, to challenge the accuracy and reliability of the opinion testimony. A502. Where a litigant can show that opposing testimony has been proven wrong, that testimony ought to be entitled to little weight. The evidence also shows that an insightful juror at the resentencing trial, relying on Mr. Wharton's overall positive adjustment and

18

his three years of virtually unblemished behavior prior to the resentencing, might have seen through the amicus experts' flawed conclusions.

In amicus' view, known history should be ignored and Appellant's death sentence should be affirmed based on expert testimony that we know to be wrong. It asks that Mr. Wharton be executed because it could have hired experts to testify that he was a future danger when history has proven that he was not. This is a bizarrely Kafkaesque view of our justice system. It should be rejected. *Cf. Lee v. Glunt*, 667 F.3d 397, 407–08 (3d Cir. 2012) (due process would be violated if defendant was convicted based on expert testimony that was thought to be true at the time, but was later proved wrong).

## II.   AT A MINIMUM, THIS CASE SHOULD BE REMANDED FOR A NEW HEARING BEFORE A DIFFERENT JUDGE WHERE THE TOTALITY OF CIRCUMSTANCES, INCLUDING THE DISTRICT COURT'S FOCUS ON ALLEGATIONS OF UNETHICAL CONDUCT BY THE DAO, CREATED AN APPEARANCE OF UNFAIRNESS AND PARTIALITY.

The district court conducted the proceedings in this case with two purposes in mind. One purpose was to follow the mandate of this Court's remand and hold such hearings as were necessary to resolve Appellant's ineffective assistance of counsel claim. The second purpose was to investigate any potential ethical or professional misconduct related to the DAO's concession that counsel had been ineffective and its communication with the family of the victims. These two purposes stood in conflict, because a determination that the ineffective assistance claim had merit

would demonstrate that the DAO had acted properly in conceding the merits of the claim.

Amicus views the claim as a challenge to various evidentiary and procedural rulings. AB 42. Thus, amicus argues that "Wharton's disagreement with the District Court's rulings and his attribution of supposed 'frustration' to the court are not valid grounds for claiming the District Court was unfair." AB 42.

Amicus misunderstands Appellant's claim. The problem here is not in the correctness of any particular ruling, although there is room to debate the district court's decisions. Rather, the problem lies with the district court's decisions to pursue conflicting purposes and assume dual roles.

In merging these two proceedings, the district court assumed the roles of both adjudicator and inquisitor. As adjudicator, its role was to judge the merits of Mr. Wharton's claim. As inquisitor, its role was to investigate and, if necessary, pursue sanctions arising from, the circumstances of the DAO actions. The assumption of these conflicting roles created an appearance of unfairness and partiality. A new hearing should be held.

As Appellant previously explained, the district court's investigation into whether the DAO acted unethically or with impropriety regarding its agreement that Mr. Wharton should be granted relief was in tension with the court's appearance of fairness and impartiality in deciding the merits of Mr. Wharton's claim. WIB 47–

48.  A fair tribunal is essential to due process.  *In re Murchison*, 349 U.S. 133, 136 (1955).  "[N]ot only is a biased decisionmaker constitutionally unacceptable, but 'our system of law has always endeavored to prevent even the probability of unfairness.'"  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (quoting *Murchison* at 136).  The Supreme Court has described the inquiry into whether a judge's bias violates due process as follows:

> The inquiry is an objective one.  The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) (quotation marks omitted).

The need for an objective standard is underscored by "the difficulties of inquiring into actual bias and the fact that the inquiry is often a private one."  *Id.* at 883.  The Supreme Court has asked whether the relevant circumstances "offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant," or "might lead him not to hold the balance nice, clear, and true between the state and the accused."  *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).

In *Murchison*, the Court held that the same judge may not serve as both a "one-man grand jury" and as the trier of contempt charges that he initiated.  349 U.S. at 134 (internal quotations omitted); *see also Republican Party of Minn. v. White*,

536 U.S. 765, 776 (2002) (describing *Murchison* as holding that the "judge violated due process by sitting in the criminal trial of defendant whom he had indicted"). In this case, the district court tasked itself with both investigating DAO actions and deciding the merits of the ineffectiveness claim. Like the one-man grand jury and judge in *Murchison*, these dual roles of inquisitor and adjudicator are objectively in conflict. An average person would perceive the potential for partiality and bias.

Amicus does not address Appellant's conflicting roles argument, nor does it address the above Supreme Court authority and relevant Third Circuit authority, such as *United States v. Kennedy*, 682 F.3d 244, 258 (3d Cir 2012). *See* WIB 50–51. Instead, amicus defends the district court's appointment of the OAG as amicus with full participation and rights of a party, the exclusion of defense corrections expert Cynthia Link's report, and the victim family members participation as witnesses at the hearing who were allowed to express their opinion that relief should be denied, as separate claims of error. But this misses the main point.

Granted, Appellant discussed these rulings and suggested that rulings were incorrect or exceeded the appropriate bounds of the court's discretion. The point, however, was not to argue that these rulings were error that require relief, but to show that they could lead an average person to objectively question the fairness of the proceedings. At the end of the day, it is the district court's dual toles and purposes as adjudicator and inquisitor that created an appearance of partiality and bias that

22

requires this Court to either reverse on the merits, for the reasons explained in Claim I, or remand for a new hearing before a different judge.

## CONCLUSION

For the reasons above, and those set forth in Mr. Wharton's initial brief, the district court's order should be reversed, and the case should be remanded with directions to grant the writ, conditioned on a retrial of the sentencing, or for a new hearing before a different judge.

Respectfully submitted,

/s/ Stuart Lev
STUART LEV
ELIZABETH MCHUGH
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
Stuart_lev@fd.org

*Counsel for Appellant*

Dated:    May 17, 2023

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), that the attached Reply Brief of Appellant Robert Wharton:

1.      Contains 5,646 words;

2.      Complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2010, in 14-point Times New Roman font;

3.      Has been scanned for viruses using Symantec Endpoint Protection and is free from viruses; and

4.      That the text of the electronic brief is identical to the text in the paper copies.

/s/ Stuart Lev
Stuart Lev

Dated:      May 17, 2023

## CERTIFICATE OF BAR MEMBERSHIP

I certify, pursuant to Third Circuit Local Rule 28.3(d), that I am a member of the Bar of this Court.

/s/ Stuart Lev
Stuart Lev

Dated: May 17, 2023

**CERTIFICATE OF SERVICE**

I, Stuart Lev, hereby certify that on this date I served a copy of the foregoing on

the following person in the manner indicated below:

BY ELECTRONIC SERVICE THROUGH ECF

Paul George, Esq.
Office of the Philadelphia District Attorney
3 South Penn Square
Philadelphia, PA 19107

Cari Mahler, Esq.
Office of Attorney General
Criminal Law Division
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120

/s/ Stuart Lev
Stuart Lev

Dated:  May 17, 2023